KEITH R. VERGES (kverges@figdav.com)
PARKER D. YOUNG (parker.young@figdav.com)
RAYMOND E. WALKER (ray.walker@figdav.com
FIGARI & DAVENPORT, L.L.P.
901 Main Street, Suite 3400
Dallas, Texas 75202
Tel: (214) 939-2000
Fax: (214) 939-2090
(*Admitted Pro Hac Vice*)

SHAWN T. LEUTHOLD
(leuthold@aol.com)
LAW OFFICE OF SHAWN T. LEUTHOLD
1671 The Alameda #303
San Jose, California 95126
Tel: (408) 924-0132
Fax: (408) 924-0134

VERA BROOKS
(vbrooks@thompsonbrookslaw.com)
THOMPSON & BROOKS
412 E. Madison Street, Suite 900
Tampa, Florida 33602
Tel: (813) 387-1822
Fax: (813) 387-1824
(*Admitted Pro Hac Vice*)

ATTORNEYS FOR PLAINTIFFS RICHARD NOLL AND RHYTHM MOTOR SPORTS, LLC

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| RICHARD NOLL AND RHYTHM MOTOR SPORTS, LLC, Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EBAY INC.,<br><br>Defendant. | CASE NO. 5:11-cv-04585-EJD<br><br>**DECLARATION OF KEITH VERGES**<br><br>Jury Trial Demanded |

Keith R. Verges declares pursuant to 28 U.S.C. § 1746 as follows:

1. I am a partner in the law firm of Figari & Davenport, LLP ("Figari & Davenport"), which has been retained as counsel for Plaintiff in this action. I am duly admitted to practice in the State of Texas. I have personal knowledge of the facts contained herein, and they are true and

correct. Among other things, I have personally studied the documents, electronic data, and depositions in this case to learn the information set out below.

2. Attached as Exhibit 1 is a true and correct copy of a resume of the firm, Figari & Davenport.

3. Attached as Exhibit 2 is a true and correct copy of a list of class action lawsuits in which I and/or members of Figari & Davenport have served as counsel.

4. Attached as Exhibit 3 are true and correct copies of attorney biographies for me, Parker Young, and Raymond E. Walker, all of whom are counsel of record for Plaintiffs in this case.

5. As set out in the foregoing exhibits, I and the other attorneys at Figari & Davenport have extensive experience in handling class action and other complex commercial litigation. We have been lead counsel or co-lead counsel in many major class action or derivative lawsuits in state and federal courts across the country.

6. It is my opinion that the settlement in this matter is fair, reasonable, and adequate to the members of the Settlement Class. I base my opinion upon having reviewed thousands of pages of documents produced by eBay, having previously deposed and studied the depositions of seven (7) eBay employees in this and prior litigation with eBay, some of whom were deposed more than one time and in varying capacities. In addition, we performed significant independent research and investigation of applicable law, eBay's historic business practices, eBay customer complaints, and other e-commerce business practices. We also have become familiar with eBay's data from our own investigation and research, prior litigation, and in consultation with independent experts in information technology, including the Teradata technology that eBay uses. We extensively studied, with the assistance of a consulting expert, 40,000 transactions of sample data in this case, as well as

SQL queries eBay used to gather that and other data produced in this case. The following is my assessment of some of the pros and cons that led me to agree to the settlement in this case.

7. As set forth in the Third Amended Complaint ("TAC") and other court pleadings, the basic theory of this case is that eBay's listing duration called Good 'Til Cancelled ("GTC") connotes an indefinite listing duration and that the contract and eBay's disclosures did not permit eBay to charge recurring listing fees every 30 days for GTC listings. eBay generally charges two types of fees to list an item: (1) an "Insertion Fee" upon listing; and (2) a fee for optional features "Optional Feature Fee" or "Feature Fee" that gives sellers the ability to add certain listing upgrades to increase the chances for a successful sale, like highlighted or bold listings. eBay re-charges these fees every 30 days for GTC listings. Plaintiffs seek to recover all Insertion and Optional Feature Fees incurred after the initial 30-day listing period of GTC listings placed during the Class period of September 16, 2008 – June 19, 2012 (the "Disputed Fees").

8. We originally learned of the problem when our clients brought to our attention the complaint that they expected GTC listings to renew automatically without any further listing fees. There is more detail in the FAC and other pleadings on file, but eBay operates three virtual marketplaces: (1) Core, (2) Motors, and (3) Stores. Each marketplace has its own Fees Schedule that links from the User Agreement. Each of the Fees Schedules sets out the fees for the available listing durations. As explained in more detail below, we allege that the Fees Schedules did not properly explain the recurring fees that eBay charged for GTC listings.

9. Just before the September 16, 2008, commencement of the Class Period, the available listing durations for the different marketplaces were:

| **Marketplace** | **Durations** |
|---|---|
| Core | 1, 3, 5, 7, 10 days |
| Motors | 1, 3, 5, 7, 10 days |
| Stores | 30 days or GTC |

Notably, Stores previously had the GTC duration and the Stores Fees Schedule contained the following table that explained the recurring nature of GTC listing fees:

| Listing Upgrade Fees | | |
|---|---|---|
| Features | 30 days | Good 'Til Cancelled (recurring 30-day listing) |
| Gallery | Free | Free |
| Gallery Plus | $0.35 | $0.35 / 30 days |
| Subtitle | $0.02 | $0.02 / 30 days |
| Listing Designer | $0.10 | $0.10 / 30 days |
| Scheduled Listings | $0.10 | $0.10 |
| Bold | $1.00 | $1.00 / 30 days |
| Border | $3.00 | $3.00 / 30 days |
| Highlight | $5.00 | $5.00 / 30 days |

The Stores Fees Schedule contained this table at all times from September 16, 2008, through March 29, 2010. Plaintiffs' complaint arises in part out of the fact that the Core and Motors Fees Schedules did not have a table like this during the Class Period.

10. On September 16, 2008, eBay introduced the GTC duration (that was previously limited to Stores) to Core and Motors. The Fees Schedules for these marketplaces did not state that GTC listing fees would recur, and the table of Listing Upgrade Fees (like that for Stores) looked like this:

Listing Upgrade Fees

| Feature | Fee – Auction Style, Fixed Price Format (3, 5, 7, 10 Days) | Fee – Fixed Price (30 Days, Good 'Til Cancelled), Classified Ad |
|---|---|---|
| Value Pack | $0.65 | $2.00 |
| Gallery* | Free | Free |
| Gallery Plus | $0.35 | $1.00 |
| Listing Designer** | $0.10 | $0.30 |
| Subtitle | $0.50 | $1.50 |
| Bold | $2.00 | $4.00 |
| Scheduled Listings | $0.10 | $0.10 |
| Gift Services | $0.25 | $0.75 |
| Border | $4.00 | $8.00 |
| Highlight | $5.00 | $10.00 |
| Gallery Featured | $24.95 | $74.95 |
| Home Page Featured | $59.95 | $179.95 |
| List in Two Categories*** | x2 | x2 |

[Dkt. 102-2 at 4-5.] However, eBay also undertook a campaign to promote and explain GTC to Core and Motors users, including the publication of an internet-based "August 2008 Update," which had more detail on how GTC worked. The parties argued vigorously about the legal relevance of the August 2008 update, but it is undisputed that it contained the following:

> Basic Fees tab: "sellers will now have the option to use the Good 'Til Cancelled (GTC) duration which allows listings to automatically renew every 30 days. This option is also available at no extra cost."
>
> Fee FAQ tab: "GTC stands for Good 'Til Cancelled. A listing with GTC duration will renew every 30 days until the item sells successfully. Insertion fees and all Feature Fees will be charged every 30 days at the time the listing is renewed."

[August 2008 Update, Dkt. 27-3 at 4, 7.] eBay also published other information stating the GTC listing fees would be charged every 30 days.

11. During the Class Period, eBay added "Insertion fees are charged every 30 day period" to the end of the Fees Schedules. On December 16, 2008, eBay revised the Core Fees Schedule (but not the Motors Fees Schedule) by adding:

> Good 'Til Cancelled renews automatically every 30 days until the item sells or you end the listing. Insertion Fees are charged every 30 day period.

[Dkt. 102-5 at 6.] eBay added this verbiage to the Motors and Stores Fees Schedules on March 30, 2010. [Dkt. 102-6 at 7, Dkt. 102-7 at 5.] Finally, on June 20, 2012, (after this case was filed), eBay added to all three Fees Schedules the following:

> Good 'Til Cancelled listings renew automatically every 30 days until all of the items sell, you end the listing, or the listing violates an eBay policy. Insertion fees and optional feature fees are charged every 30-day period.

[*E.g.*, Dkt. 102-8 at 6.] This disclosure permits eBay to charge the fees in dispute every 30 days and marks the end of the proposed Class Period.

12. eBay has consistently and vigorously defended this case from the very outset. This case has been procedurally complex and hard fought. On September 15, 2011, Noll filed suit and

eBay thrice moved to dismiss. On April 23, 2012, the Court granted eBay's first motion to dismiss the (1) fraud; (2) UCL; (3) FAL; and (4) CLRA claims without prejudice and with leave to amend. The Court denied eBay's motion to dismiss the claims for (1) breach of contract; (2) unjust enrichment; and (3) declaratory judgment. On June 15, 2012, Noll filed his First Amended Class Action Complaint ("FAC") and on July 10, 2012, Plaintiff Rhythm filed a separate lawsuit and sought leave to intervene in the Noll case.

13. On September 4, 2012, the court granted Rhythm's Motion to Intervene and denied eBay's second motion to dismiss the FAC as moot, requiring Plaintiffs to file a consolidated complaint. On October 2, 2012, Plaintiffs filed their Consolidated Second Amended Class Action Complaint ("SAC"). On May 30, 2013, the Court granted eBay's third motion to dismiss, with leave to amend (although without leave to the extent Insertion Fees were sought during times the Fees Schedules stated "Insertion Fees are charged every 30 day period.") The Court dismissed with prejudice the automatic renewal/continuous service count of the SAC.

14. On July 1, 2013, Plaintiffs filed their Consolidated Third Amended Complaint ("TAC"). In the TAC, Plaintiffs allege eight causes of action for (1) breach of contract; (2) UCL violations; (3) FAL violations; (4) violations of Cal. Bus. & Prof. Code § 17600 (automatic renewal/continuous service); (5) CLRA violations; (6) unjust enrichment; (7) fraud; and (8) declaratory judgment. However, as described above, the Court had previously dismissed with prejudice Count 4 and all claims for Insertion Fees are during times Fees Schedules stated "Insertion Fees charged every 30 day period."

15. On October 8, 2014, Plaintiffs filed their motion for class certification. The Class sought is substantially the same as the Settlement Class:

> all natural persons and entities who are United States residents and who (1) placed GTC listings on eBay that commenced during the Class Period, and (2) were charged

> Disputed Fees. Excluded from the Class are the Judge of this Court and his staff, and all directors, officers, and managers of eBay, and their immediate families. An entity is deemed a "United States resident" for purposes of the foregoing if the primary contact information for the entity in eBay's current records is an address within the United States.

16. The Class Period is September 16, 2008, to June 19, 2012; the listings included depend on the marketplace: (1) Core and Motors listings span this entire time span; and (2) eBay Stores listings are limited from March 30, 2010, to June 19, 2012[1]. There are 1,192,947 unique user IDs in the Settlement Class (a person could have more than one user ID).[2]

17. eBay has strenuously denied any wrongdoing or liability throughout the litigation, and continues to deny any wrongdoing or liability. eBay's merits defense includes (1) its web site was revised during the proposed Class Period to say that "Insertion fees are charged every 30 day period;" (2) other web pages such as the "FAQ" section of the August 2008 Seller Update state that "Insertion Fees and all Feature Fees will be charged every 30 days at the time the listing is renewed;" (3) It is common sense that automatic renewal comes with renewed listing fees and Plaintiffs' interpretation of GTC would produce absurd results; and (4) Plaintiffs and the proposed Class received invoices itemizing the fees at issue each month and voluntarily paid the recurring fees without complaint. eBay also contends that no class can be certified for any purpose other than settlement. These considerations place at risk both the ability to certify a class and, even if it is certified, the extent of any recovery of recurring listing fees.

18. The Court has twice dismissed the fraud-based claims, and dismissed with prejudice all claims seeking recurring insertion fees at any time the operative Fees Schedules stated that "Insertion Fees are charged every 30-day period." While Plaintiffs believe that their breach of

---

[1] This limitation is due to the fact that the Stores Fees Schedule clearly stated that GTC fees would recur from September 16, 2008-March 29, 2010.

[2] A user ID is a user chosen identification name associated with an account. Each account must have a user ID. However, an eBay user can open multiple eBay accounts, so the same person may have more than one "user ID."

contract claim required eBay to clearly and unequivocally state that both Insertion Fees and Optional Feature Fees would be charged every 30 days for GTC Listings, there is some risk that the Court or a jury might find that other extrinsic evidence, such as information in the August 2008 Update, might permit eBay to charge recurring fees. Moreover, it is undisputed that invoices with the itemized recurring fees were sent to all Class Members and the Court or a jury might find that Class Members knowingly or voluntarily paid recurring fees, especially fees paid for listings that went on for multiple months. In other words, eBay posits that a person might not have understood that they would get charged every 30 days, but that the person definitely should have known they were getting charged the recurring fees when they received and paid invoices in months two and later. eBay also strenuously argued that persons who sold their item(s) received the full benefit of the bargain of fees. Accordingly, while Plaintiffs believe that the invoices were not properly sent to Class Members and were far from clear, there is an even greater risk for renewal fees charged for months two and later that eBay could prevail on the merits and/or prevent class certification through knowing or "voluntary" payment.

19. This case has already been expensive, both from a time and out-of-pocket cost perspective. Plaintiffs' counsel have devoted over three years to this case, including multiple motions and extensive discovery. Plaintiffs also anticipate that costs will significantly increase, due to merits discovery, extensive data analysis and economic issues involved. Moreover, the case would like continue for at least one more year in the trial court, not to mention delays on appeal. In that regard, there would probably be an interlocutory appeal of any grant of class certification and an appeal on any merits decision favorable to Plaintiffs. All of these considerations would delay even a successful resolution of this case for probably at least three more years. This delay would

also mean that certain Class Members might not be reimbursed, because they might have changes of address or other changes that make notice and distribution of any award difficult or impossible.

20. No class has yet been certified, and eBay has informed us of many defenses it plans to use to prevent class certification. While Plaintiff contends that all class members' experiences were identical and predicated on uniform web pages published by eBay, eBay made many arguments to the contrary. For example, eBay asserts that Plaintiffs' contract claim cannot be certified because the "full record" of extrinsic evidence needed to determine each seller's "expectations" regarding GTC will be unique to each seller. While Plaintiffs believe that contract interpretation must be resolved on a class-wide basis, based on the objectively reasonable expectations of a typical consumer, eBay's argument presents a risk that no class might be certified due to individual questions.

21. eBay also argues that Plaintiffs cannot show that the damages claims for all sellers can be resolved on a class wide basis, and has provided an economic expert who opines that individual issues predominate. *See Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013) (plaintiff seeking certification under Rule 23(b)(3) must establish "through evidentiary proof" that "damages are capable of measurement on a classwide basis"). eBay and its expert contend that individualized information such as the following would be required to assess liability and damages:

- Whether the person knew about recurring fees and/or had seen the August 2008 update and other information that disclosed recurring fees sold;
- The number of times the listing renewed;
- Whether the seller saw, studied and paid invoices with renewal fees;
- How many GTC listings the person had placed, such as whether the person had made Stores GTC listings prior to March 10, 2010;
- The revenues and profits the seller received from each sale.

While Plaintiffs assert that *Comcast* is limited to antitrust cases where damages are intrinsically complex and that their fee refund model fits within the general rule that "damage calculations alone cannot defeat certification," (*Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)), common proof of damages presents a risk on class certification and significant expense to the class for damages experts.

22. Damages are important both on the merits and for class certification. Our simplest model is to recover all recurring listing fees for GTC listings. The total amount of Disputed Fees is approximately $50 million. However, these fees are for all renewals, not just the first renewal. Some GTC listings renewed more than 10 times. eBay strenuously argues that, at most, all Class Members knew or should have known that they were paying recurring fees when they received an paid their first invoice. The total amount of Disputed Fees attributable to the first month's renewal was approximately $9 million.

23. We believe that the settlement amount of $6.4 million and a pro rata distribution based on the percentage of Disputed Fees paid by each Class Member is the most economical and fair approach to maximize the amount recovered by each class member and minimize the expense of administration.

24. An additional element in the overall mix of information I considered was the time value of money. If we were to press for the maximum amount of recovery, and assuming we were to prevail, it is my opinion that collecting anything from eBay after it exhausts all of its procedural and appellate rights would take a minimum of an additional two to three years. A benefit of the settlement is an immediate payment to the Class.

25. All of the foregoing considerations were part of extensive negotiations prior to and during the two mediations and other settlement negotiations with eBay. Given the countervailing considerations presented by the two dismissal orders, eBay's continued vigorous defense against

our remaining claims, the potential for delay, the many substantive and class certification defenses, and potential difficulties in determining and proving damages, we believe that a substantial discount from the total amount of Disputed Fees was essential in order to bring closure, certainty, and definite relief to the Class. Moreover, no one had previously taken the time or initiative to assert these claims and we believe the settlement brings real benefit to Class Members. We believe that a $6,400,000 total Settlement Fund is well within the acceptable range of relief in the case, and reflects a substantial premium over the relatively small amount of individual damages that spawned our investigation in the case. Additionally, we believe that the simplified, straight-percentage payment to all Class Members is the best way to efficiently distribute the available funds to the Class. I therefore believe the settlement is fair, reasonable and adequate to the Class.

26. I have worked with several different class action administrators to distribute payments in class action settlements. It has been my experience that, depending on the number of class members, it is a good estimate that it will cost approximately $1 per class member to send a check (including the costs of issuance and postage), especially considering additional costs likely to be incurred for re-issuing and re-mailing checks to certain class members.

27. For small checks of less than $1, class members will often not cash them. For example, I was lead class counsel in the prior settlement of *Brice Yingling d/b/a Alamo Autosports and Andy Scott v. eBay, Inc.*, Cause No. C 09-01733, In the United States District Court for the Northern District of California ("*Yingling*") in which checks were sent to 2.5 million settlement class members. The first mailing of checks cost over $1.5 million, and thereafter there were continuing costs of over $100,000 for bank charges, reconciliation of bank charges, call center charges from the administrator, and postage/processing for re-issued checks. About 900,000 of the initial set of 2.5 million checks were cashed. In dollar volume, about $20.3 million in checks were issued, and about $15.4 million were cashed. Thereafter, the administrator and I worked together to locate recipients. First, about 10,500 checks totaling about $1.17 million were re-issued and mailed. About $500,400 of these checks were cashed. Second, the administrator compiled a list of persons who had not cashed checks of at least $500 and did detailed research to locate and

telephone them in an effort to be sure they would receive and cash their checks. This resulted in a third check mailing of 416 checks totaling about $626,000. 338 checks were cashed. Of the original $20 million in checks issued, about $16 million were eventually cashed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15th day of January, 2015.

Keith R. Verges

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record will be served with a copy of this document via the Court's CM/ECF system pursuant to the local rules of this Court, on this 15th day of January, 2015.

/s/ Keith R. Verges
Keith R. Verges