1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                         NORTHERN DISTRICT OF CALIFORNIA

9                                 SAN JOSE DIVISION

10

| | |
|---|---|
| RICHARD NOLL AND RHYTHM MOTOR SPORTS, LLC, Individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>            v.<br><br>EBAY, INC,<br><br>                    Defendant. | Case No.  5:11-cv-04585-EJD<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. Nos. 134, 140 |

         Plaintiffs Richard Noll ("Noll") and Rhythm Motor Sports, LLC ("Rhythm") (collectively,

"Plaintiffs") bring this is a putative class action against Defendant eBay, Inc., ("Defendant")

regarding the recurring fees for the Good 'Til Cancelled ("GTC") listings.  Plaintiffs are eBay

sellers who alleged that eBay failed to adequately disclose that the listing fees for GTC listings

would be charged on a recurring, monthly basis.  See Dkt. No. 140 at 3.  Presently before the

Court are Plaintiffs' Motion for Final Approval of Class Action, and Motion for Attorneys' Fees

and Costs.  See Dkt. Nos. 134, 140.

         Having reviewed the Settlement Agreement and the parties' and objectors' arguments and

papers, the Motion for Final Approval of Class Action is GRANTED, and the Motion for

Attorneys' Fees and Costs is GRANTED IN PART AND DENIED IN PART for the reasons set

forth below.

1

Case No.: 5:11-cv-04585-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
MOTION FOR ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

I.    BACKGROUND

A.    Factual and Procedural Background

i.    eBay's Marketplaces

Listings on eBay.com are governed by Fees Schedules depending on the nature of the listing, referenced as: (1) Core, (2) Motors, and (3) Stores.  eBay "Core" is eBay's overall marketplace on which sellers can list items for sale.  eBay "Motors" consists of web pages on eBay dedicated to automotive vehicles, parts, and accessories.  eBay Stores allows sellers to display all of their listed items in a single online "Store."  See Dkt. No. 140-1 ("Verges Decl.") ¶ 8.

ii.    Before the Start of the Class Period

Before September 16, 2008, the commencement of the Class Period, the GTC listing duration was available only on the Stores marketplace, and not for Core or Motors listings.  See Dkt. No. 130 at 5.  During this time, the Stores Fees Schedule contained the following table that explained that all fees for GTC Listings would be charged on a recurring basis every 30 days:

| Listing Upgrade Fees | | |
|---|---|---|
| Features | 30 days | Good 'Til Cancelled (recurring 30-day listing) |
| Gallery | Free | Free |
| Gallery Plus | $0.35 | $0.35 / 30 days |
| Subtitle | $0.02 | $0.02 / 30 days |
| Listing Designer | $0.10 | $0.10 / 30 days |
| Scheduled Listings | $0.10 | $0.10 |
| Bold | $1.00 | $1.00 / 30 days |
| Border | $3.00 | $3.00 / 30 days |
| Highlight | $5.00 | $5.00 / 30 days |

The Stores Fees Schedule contained this table at all times from September 16, 2008 through March 29, 2010.  See Verges Decl. ¶ 9; see also Dkt. No. 130 at 6.

iii.    eBay Introduces GTC to Core and Motors

On September 16, 2008, eBay made the GTC duration available for listings on Core and Motors.  See Dkt. No. 130 at 6.  According to Plaintiffs, the Fees Schedules for these listings did not state that GTC listing fees would recur, and the table of "Listing Upgrade Fees" looked like

2

this:

| Listing Upgrade Fees | | |
|---|---|---|
| Feature | Fee -- Auction Style, Fixed Price Format (3, 5, 7, 10 Days) | Fee -- Fixed Price (30 Days, Good 'Til Cancelled), Classified Ad |
| Value Pack | $0.65 | $2.00 |
| Gallery* | Free | Free |
| Gallery Plus | $0.35 | $1.00 |
| Listing Designer** | $0.10 | $0.30 |
| Subtitle | $0.50 | $1.50 |
| Bold | $2.00 | $4.00 |
| Scheduled Listings | $0.10 | $0.10 |
| Gift Services | $0.25 | $0.75 |
| Border | $4.00 | $8.00 |
| Highlight | $5.00 | $10.00 |
| Gallery Featured | $24.95 | $74.95 |
| Home Page Featured | $59.95 | $179.95 |
| List in Two Categories*** | x2 | x2 |

See Verges Decl. ¶ 10.

### iv.    Revisions to the Fees Schedules

On December 16, 2008, eBay revised the Core Fees Schedule (but not the Motors Fees Schedule) by adding:

> Good 'Til Cancelled renews automatically every 30 days until the item sells or you end the listing.  Insertion Fees are charged every 30 day period.

See id. ¶ 11.

eBay added this to the Motors and Stores Fees Schedules on March 30, 2010.  Id.  Finally, on June 19, 2012, (after this case was filed), eBay added to all three Fees Schedules the following disclosure:

> Good 'Til Cancelled listings renew automatically every 30 days until all of the items sell, you end the listing, or the listing violates an eBay policy. Insertion fees and optional feature fees are charged every 30-day period.

Case No.: 5:11-cv-04585-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
MOTION FOR ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

1    Id. The parties agree that listings initiated by eBay users after June 19, 2012 are not at issue in

2    this case. See Dkt. No. 130 at 8.

3             **v.   Procedural Background**

4        Plaintiffs alleged that eBay was required, but failed, to clearly and unequivocally state that

5    both Insertion Fees and Optional Feature Fees would be charged every 30 days for GTC Listings

6    placed between September 16, 2008 and June 19, 2012.[1] See Dkt. No. 130 at 3. During the Class

7    Period, eBay added the phrase "Insertion fees are charged every 30 day period" to the end of some

8    of the relevant fees schedules. See id. On June 20, 2012 - nine months after the Complaint was

9    filed - eBay added the phrase "Insertion fees and optional feature fees are charged every 30-day

10    period" to all of the operative Fees Schedules. See id. Plaintiffs allege that GTC connotes an

11    indefinite listing duration and that the contract and eBay's disclosures did not permit eBay to

12    charge recurring listing fees every 30 days for certain GTC listings. See id.

13        Plaintiffs seek to recover certain Insertion and Optional Feature Fees incurred after the

14    initial 30-day listing period (the "Disputed Fees") for some listings placed between September 16,

15    2008, and June 19, 2012. See id.

16        In the Original Complaint, Plaintiffs asserted claims for (1) breach of contract; (2)

17    violation of the UCL, Cal. Bus. & Prof. Code § 17200; (3) violations of the false advertising law,

18    Cal. Bus. & Prof. Code § 17500 et seq. ("FAL"); (4) violations of the CLRA, Cal. Civ. Code §

19    1750 et seq.; (5) unjust enrichment/common law restitution; (6) fraud and deceit; and (7)

20    declaratory judgment. See Dkt. No. 1. On April 23, 2012, the Court denied eBay's motion to

21    dismiss the claims for (1) breach of contract; (2) unjust enrichment; and (3) declaratory judgment.

22    See Dkt. No. 57. The Court granted the motion to dismiss all claims against the entities eBay

23    Europe and eBay International with prejudice and the (1) fraud; (2) UCL; (3) FAL; and (4) CLRA

24    claims without prejudice and with leave to amend. See id.

25

26    _____

     [1] eBay generally charges two types of fees to list an item: (1) an "Insertion Fee," which is the

27    initial fee charged to list an item; and (2)"Optional Feature Fees" (sometimes called "advanced listing upgrade fees") for optional features or upgrades that sellers may buy to increase the chances for a successful sale, like highlighted or bolded listings.

28

4

Case No.: 5:11-cv-04585-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
MOTION FOR ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

1   After additional litigation, Plaintiffs filed their Consolidated Second Amended Class

2   Action Complaint ("SAC") on October 2, 2012, alleging and re-alleging further facts in support of

3   (1) breach of contract; (2) UCL; (3) FAL; (4) Cal. Bus. & Prof. Code § 17600 (automatic

4   renewal/continuous service); (5) CLRA; (6) unjust enrichment; (7) fraud; and (8) declaratory

5   judgment claims.  Dkt. No. 90.  On October 17, 2012, eBay moved to dismiss the "fraud based"

6   counts two, three, five, and seven of the SAC.  See Dkt. No. 91.  On May 30, 2013, the Court

7   granted eBay's motion to dismiss those claims with leave to amend.  See Dkt. No. 101.  The Court

8   dismissed with prejudice the automatic renewal/continuous service count of the SAC.  See id.

9   On July 1, 2013, Plaintiffs filed their Consolidated Third Amended Complaint ("TAC").

10   Dkt. No. 102.  In the TAC, Plaintiffs assert causes of action for (1) breach of contract; (2) UCL

11   violations; (3) FAL violations; (4) violations of Business and Professions Code section 17600

12   (automatic renewal/continuous service); (5) CLRA violations; (6) unjust enrichment; (7) fraud;

13   and (8) declaratory judgment.  See id.

14   On October 3, 2014, Plaintiffs filed their motion for class certification.  Dkt. No. 118.  On

15   January 15, 2015, Plaintiff filed a joint motion to certify class and preliminarily approve

16   settlement.  Dkt. No. 130.

17   **B.   The Settlement Agreement**

18   After two mediations before the Honorable Dickran Tevrizian and the Honorable Carl J.

19   West of JAMS, the parties reached a proposed settlement agreement executed on January 14,

20   2015.  See Dkt. No. 130-1, Exh A ("Settlement Agreement").  The key terms of the Settlement

21   Agreement are briefly summarized as follows:

22   **i.   Class**

23   The Class is defined as follows:

24   All natural persons and entities who are United States residents and
who (1) placed GTC Listings on eBay that commenced during the
25   Class Period, and (2) were charged Disputed Fees. Excluded from
the Class are the Judge of this Court and his staff, and all directors,
26   officers, and managers of eBay, and their immediate families.

27   Id. at § 1.4.

28   Case No.: 5:11-cv-04585-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
MOTION FOR ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

5

### ii.    Class Period

The Class period is defined as follows:

> (1) for Stores Listings, the period from March 30, 2010 to June 19, 2012, and (2) for Core Listings and Motors Listings, the period from September 16, 2008 to June 19, 2012.

Id. at § 1.23.

### iii.    Settlement Fund and Distribution

There are 1,192,947 unique user IDs in the Class.[2]  See Verges Decl. ¶ 16.  The Settlement provides for the establishment of a $6,400,000 Gross Settlement Fund.  See Settlement Agreement at § 2.1.  The Settlement Agreement provides immediate relief, and a substantial refund, to the nearly 1.2 million eBay sellers in the Class.  See Dkt. No. 140 at 3.  There is no claims process, and most sellers will receive an automatic credit without the need to cash a check.  See Dkt. No. 130 at 8.  Class Members with active eBay accounts will receive an automatic credit to their account.  See id.  Class Members without active eBay accounts, as well as Class Members with closed accounts, will receive a check.  See id.

### iv.    Final Notice

The Parties have agreed to notify Class Members of the Settlement in the following ways: (i) by email to each Class Member, which shall include a hypertext link to the Settlement website; (ii) by Internet Posting, i.e., a Settlement website created to provide information about the Settlement, including the Full Notice; (iii) by Mail Notice for those Class Members whose email notices are returned as undeliverable; and (iv) by press release, in order to reach Class Members for whom eBay does not have a current email or postal address.  See Dkt. No. 130 at 10. Beginning on about February 27, 2015, the Claims Administrator also provided toll-free telephone support and assistance for Class Members with questions about the Settlement.[3]  See Dkt. No.

---

[2] A user ID is a user-chosen identification name associated with an account.  Each selling account must have a user ID.  However, an eBay user can open multiple eBay accounts, so the same person may have more than one "user ID."
[3] From February 27, 2015 through May 3, 2015, the Claims Administrator handled 615 telephone calls.  The Administrator also responded to 975 email messages from Class Members.

Case No.: 5:11-cv-04585-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
MOTION FOR ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

1   140-22 ("Baker Decl.") ¶ 17.

2   **v.      Monetary Relief**

3        Payments will be made on a pro rata basis in the form of eBay credits and check payments,

4   and are expected to put more than $4.5 million into the hands of Class Members, representing

5   approximately 50% of the first month's renewal fees for the GTC Listings at issue.  <u>See</u> Dkt. No.

6   130 at 10.

7   **vi.      Attorneys' Fees and Incentive Award**

8        Class Counsel seeks the "benchmark" 25% fee ($1,600,000 of the $6,400,000

9   Settlement Fund), which is less than 1.6 times the lodestar.  <u>See</u> Dkt. No. 134 at 2-3.  The

10  expenses incurred as of the filing of this motion total $67,923.16 and are expected to increase by

11  approximately $5,000 prior to final administration.  Class counsel does not seek any interest on

12  this sum.  <u>See</u> <u>id.</u>

13       Each Named Plaintiff seeks $15,000 as an enhancement award for participation as the class

14  representatives in this Action for their assistance with the investigation of the claims, participation

15  in discovery, willingness to litigate on behalf of the Class, and other support provided on behalf of

16  the Class.  <u>See</u> <u>id.</u>

17  **vii.      Cy Pres Distribution**

18       eBay will not be entitled to a reversion of any amount.  Any returned or un-cashed checks

19  shall be used to fund charitable donations, in equal amounts, to

20           (1) the National Cyber-Forensics & Training Alliance, a nonprofit
             corporation, established in 1997, dedicated to protecting consumers
21           from cyber-crime and fraud, and

22           (2) the National Consumer Law Center, a nonprofit organization
             focusing on low income consumer law issues.
23

24  <u>See</u> Dkt. No. 130 at 9.

25  **viii.      Release of Claims**

26       Class Members release all claims and causes of action that are asserted in the Action or

27  could have been asserted based on the allegations in the Action.  <u>See</u> <u>id.</u> at 10.

28

Case No.: <u>5:11-cv-04585-EJD</u>
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
MOTION FOR ATTORNEYS' FEES AND COSTS

1

### ix.    Opting Out and Objectors

2

Few Class members requested exclusion (97 out of more than 1,188,000 Class members—

3    0.0082% of the Class), and only 3 *pro se* (0.00025% of the Class) filed objections.  See Dkt. No.

4    140 at 3-4.  They are Burgess, Pailes, and Narkin.  See Dkt. Nos. 135, 136, 138.  Ms. Narkin was

5    not timely, nor is she a class member.

6    ## II.    LEGAL STANDARD

7

A class action may not be settled without court approval.  Fed. R. Civ. P. 23(e).  When the

8    parties to a putative class action reach a settlement agreement prior to class certification, "courts

9    must peruse the proposed compromise to ratify both the propriety of the certification and the

10   fairness of the settlement."  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

11

"Approval under 23(e) involves a two-step process in which the Court first determines

12   whether a proposed class action settlement deserves preliminary approval and then, after notice is

13   given to class members, whether final approval is warranted."  Nat'l Rural Telecomms. Coop. v.

14   DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004).  At the final approval stage, the primary

15   inquiry is whether the proposed settlement "is fundamentally fair, adequate, and reasonable."

16   Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  Having already completed an

17   preliminary examination of the agreement, the court reviews it again, mindful that the law favors

18   the compromise and settlement of class action suits.  See, e.g., Churchill Village, LLC. v. Gen.

19   Elec., 361 F.3d 566, 576 (9th Cir. 2004); Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276

20   (9th Cir. 1992); Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982).

21   Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of

22   the trial judge because he is exposed to the litigants and their strategies, positions, and proof."

23   Hanlon, 150 F.3d at 1026.

24

An objector to a proposed settlement agreement bears the burden of proving any assertions

25   they raise challenging the reasonableness of a class action settlement.  United States v. State of

26   Oregon, 913 F.2d 576, 581 (9th Cir. 1990).  The court iterates that the proper standard for

27   approval of the proposed settlement is whether it is fair, reasonable, adequate, and free from

28

Case No.: 5:11-cv-04585-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
MOTION FOR ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

collusion - not whether the class members could have received a better deal in exchange for the release of their claims. See Hanlon, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

III.   **DISCUSSION**

   A.   **Class Certification**

   The Federal Rules of Civil Procedure describe four preliminary requirements for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. See Fed. R. Civ. P. 23(a)(1)-(4).  If these are satisfied, the court must then examine whether the requirements of Rule 23(b)(1), (b)(2), or (b)(3) are satisfied.  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2548-49 (2011).

   The Rule 23 requirements are more than "a mere pleading standard."  Id.  The class representations are subjected to a "rigorous analysis" which compels the moving party to "affirmatively demonstrate . . . compliance with the rule - that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."  Id.

   The Court first assesses whether a class exists under Federal Rule of Civil Procedure 23(a) and (b).

   i.   **Rule 23(a)**

   Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all parties is impracticable."  Fed. R. Civ. P. 23(a)(1).  In this context, "impracticability" is not equated with impossibility; it is only an apparent difficulty or inconvenience from joining all members of the class.  Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913-14 (9th Cir. 1964).  Moreover, satisfaction of the numerosity requirement is not dependent upon any specific number of proposed class members, but "where the number of class members exceeds forty, and particularly where class members number in excess of one hundred, the numerosity requirement will generally be found to be met."  Int'l Molders' & Allied Workers' Local 164 v. Nelson, 102 F.R.D. 457, 461 (N.D. Cal. 1983).

Case No.: 5:11-cv-04585-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
MOTION FOR ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

1    Here, Plaintiffs argue that the numerosity requirement is satisfied because the class

2    consists of holders of over one million eBay user IDs, and the parties agree that numerosity is met.

3    See Dkt. No. 130 at 13.  Based on that representation, the Court finds that Plaintiffs have made an

4    adequate showing of numerosity.

5    Turning to Rule 23(a)(2), this section requires that "there are questions of law or fact

6    common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality is demonstrated when the claims of

7    all class members "depend upon a common contention," with "even a single common question"

8    sufficing.  Dukes, 131 S. Ct. at 2545, 2557.  The common contention must be of such a nature that

9    it is capable of class-wide resolution, and that the "determination of its truth or falsity will resolve

10   an issue that is central to the validity of each one of the claims in one stroke." Dukes, 131 S. Ct. at

11   2545.  Moreover, the permissive standard of commonality provides that "[w]here the

12   circumstances of each particular class member vary but retain a common core of factual or legal

13   issues with the rest of the class, commonality exists." Parra v. Bashas', Inc., 536 F.3d 975, 978–

14   79 (9th Cir. 2008).

15   Here, this case arises out of a user agreement and various webpages that describe the GTC

16   Listing duration and the applicable fees.  The user agreement applies to all Class Members, and

17   Plaintiffs contend that all questions related thereto are common.  See Dkt. No. 130 at 14.  The

18   Fees Schedules and other webpages that mention GTC Listings are likewise applicable to all Class

19   Members.  See id.  Plaintiffs contend that how GTC Listings were described, how they worked,

20   and the relevant contractual terms are the same for all Class Members, thus establishing

21   commonality.  See id.  The Court agrees that answering questions, related to these aspects of GTC

22   Listings regardless of the outcome, will resolve the allegations for the whole class.  Thus, the

23   Court finds this case meets the commonality requirement of Rule 23(a)(2).

24   Rule 23(a)(3) requires that the class representative's claims be typical of those of the

25   putative class she seeks to represent.  Fed. R. Civ. P. 23(a)(3).  The typicality requirement ensures

26   that "the interest of the named representative aligns with the interests of the class." Wolin v.

27   Jaguar Land Rover N. Am. LLC, 617 F.3d 1168, 1175 (9th Cir. 2010).  Typicality is measured

28

United States District Court
Northern District of California

10

1  under a permissive standard and does not require that the representative's claims be substantially

2  identical, but only that they are "reasonably co-extensive with [the claims] of absent class

3  members . . . ." Hanlon, 150 F.3d at 1020.  Typicality is present when a defendant acts uniformly

4  toward the class members, where that uniform conduct results in injury to the class members, and

5  where the named plaintiffs suffer a similar injury to that of the class members as a result.  Hanon

6  v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).

7        Here, Plaintiffs' claims arise from the same factual basis as any other member of the

8  Class.  Plaintiffs selected the GTC listing duration and testified that they believed the applicable

9  Fees Schedules did not permit eBay to charge recurring fees not mentioned on those Fees

10 Schedules.  See Dkt. No. 130 at 14.  eBay challenged that assertion, based on the fact that

11 Plaintiffs continued to buy GTC Listings and pay recurring listing fees after they undisputedly

12 knew that such fees would be charged.  See id.  Plaintiffs contend that eBay's defenses as to

13 Plaintiffs are typical of its defenses as to the entire Class. As such, the typicality requirement is

14 satisfied.

15       Finally, Rule 23(a)(4) requires that the proposed class representative has and will continue

16 to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  To determine

17 if representation is in fact adequate, the court must ask "(1) do the named plaintiffs and their

18 counsel have any conflicts of interest with other class members and (2) will the named plaintiffs

19 and their counsels prosecute the action vigorously on behalf of the class?"  Hanlon, 150 F.3d at

20 1020.

21       Here, Plaintiffs contend that the allocation is uniform for all Class Members and applied

22 independently of the particular eBay marketplace or date of listing.  See Dkt. No. 130 at 15.

23 Moreover, Plaintiffs had listings throughout the Class Period and have no motivation to allocate

24 more or less of the net settlement fund to any marketplace or time period.  See id.  In addition,

25 Plaintiffs' attorneys have extensive experience in class action cases and have vigorously

26 conducted discovery, research, and investigation of the Class claims.  See Verges Decl. ¶¶ 2-6.

27 Accordingly, the adequacy requirements have been met.

28

### ii.   Rule 23(b)

Rule 23(b)(3) provides that a class action can be maintained where: (1) the questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (2) the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3); <u>Pierce v. Cnty. of Orange</u>, 526 F.3d 1190, 1197 n.5 (9th Cir. 2008).  Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action." <u>Hanlon</u>, 150 F.3d at 1022.

Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication . . . ." <u>Id.</u> at 1022. Here, Plaintiffs contend that this case arises out of a user agreement that describes the GTC Listing duration and the applicable fees.  The fees schedules and other webpages that mention GTC Listings are likewise applicable to all class members.  Again, Plaintiffs contend that how GTC Listings were described, how they worked, and the relevant contractual terms are the same for all class members, thus establishing predominance.  These common questions can be resolved for all members of the proposed class in a single adjudication, and are the central focus of this class action.  Accordingly, the Court finds the predominance requirement satisfied.

Finally, to meet the requirement of superiority, a plaintiff must show that a class action is the "most efficient and effective means of resolving the controversy." <u>Wolin</u>, 617 F.3d at 1175–76.  "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." <u>Id.</u> at 1175.  Moreover, the class action mechanism is superior to individual actions in consumer cases with thousands of members as "Rule 23(b)(3) was designed for situations such as this . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." <u>Holloway v. Full Spectrum Lending</u>, No. 06-cv-5975, 2007 WL 7698843, at *9 (C.D. Cal. June 26, 2007).

Here, Plaintiffs argue that the class action is superior for resolving this case by settlement

1 | because (a) the individual remedy for each Class Member is relatively small, making the expense

2 | and burden of continued individual litigation economically and procedurally impracticable; (b) no

3 | other litigation on this topic exists; (c) this forum is the best place to concentrate claims based on

4 | the location of eBay's headquarters, the evidence, and the witnesses; and (d) the proposed

5 | settlement of this case is readily manageable.  See Dkt. No. 130 at 16.  Moreover, collective

6 | resolution of the claims avoids the possibility of duplicative individual controversies or

7 | inconsistent future judicial determinations.  For these reasons, the Court finds that a class action is

8 | the superior method of resolving the claims of all the members.

9 |        Accordingly, as all requirements of class certification under Rule 23 are met, the

10 | settlement class will be certified for the purposes of settlement.

11 | **B.    Appropriateness of the Notice Plan**

12 |        Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances,

13 | including individual notice to all members who can be identified through reasonable effort."  Fed.

14 | R. Civ. P. 23(c)(2)(B).  Such notice must "clearly and concisely state in plain, easily understood

15 | language," the nature of the action, the class definition, and class members' right to exclude

16 | themselves from the class, among other things. Fed. R. Civ. P. 23(c)(2)(B).  Further, before

17 | granting final approval to a proposed class settlement, the court must "direct notice in a reasonable

18 | manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).

19 | While Rule 23 requires that reasonable efforts be made to reach all class members, it does not

20 | require that each individual actually receive notice.  Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir.

21 | 1994); see also Rannis v. Recchia, 380 F. App'x 646, 650 (9th Cir. 2010).

22 |        Here, the final class notice list contained 1,188,451 records after analysis for missing

23 | addresses.  See Baker Decl. ¶ 6.  The Claims Administrator determined that, for 20,739 of these

24 | records, email addresses were missing or invalid.  Id. ¶ 14.  The Claims Administrator mailed

25 | notices via first class mail to the 20,739 Class Members with missing or invalid email addresses.[4]

26 |

27 | [4] The Claims Administrator accomplished this after processing all postal addresses via the
National Change of Address database maintained by the United States Postal Service.

28 |

Case No.: 5:11-cv-04585-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
MOTION FOR ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

1    Id. ¶¶ 13, 14.

2          On March 2, 2015, the Claims Administrator sent email notice to 1,167,712 valid email

3    addresses.  Id. ¶ 9.  Of these email notices, 170,746 (approximately 17%) were returned as

4    undeliverable.  Id. ¶ 10.  On March 12, 2015, the Class Administrator mailed notice to the 170,746

5    persons whose email was returned undeliverable.  Id. ¶ 14.  Of these mailed notices, 34,065 were

6    returned undeliverable, further tracing was done by the Class Administrator and 16,635 notices

7    were re-mailed to updated addresses.  Id. ¶ 16.  As of May 3, 2015, 98.57% of the total 1,188,451

8    potential Class Members appear to have received direct notice either by email or mail.  Id.

9          The Court again finds that the notice plan and class notices are consistent with Rule 23,

10   and that the plan has been fully and properly implemented by the parties and the class

11   administrator.

12         **C.    Fairness of the Settlement**

13          Before approving a class action settlement, the Court must find the settlement "fair,

14   reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); In re Online DVD-Rental Antitrust Litig.,

15   779 F.3d 934, 944 (9th Cir. 2015).  To assess the fairness of a settlement, courts look to the eight

16   so-called Churchill factors:

17             (1) the strength of the plaintiff's case; (2) the risk, expense,
               complexity, and likely duration of further litigation; (3) the risk of
18             maintaining class action status throughout the trial; (4) the amount
               offered in settlement; (5) the extent of discovery completed and the
19             stage of the proceedings; (6) the experience and view of counsel; (7)
               the presence of a governmental participant; and (8) the reaction of
20             the class members to the proposed settlement.

21   Online DVD-Rental, 779 F.3d at 944. (quoting Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566,

22   575 (9th Cir. 2004)).  When, as here, settlement occurs before formal class certification, "[t]he

23   district court's approval order must show not only that it has explored the Churchill factors

24   comprehensively, but also that the settlement is not the product of collusion among the negotiating

25   parties."  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946–47 (9th Cir. 2011).

26         **i.    Strength of Plaintiffs' Case**

27          In assessing the strength of a plaintiff's case, "there is no 'particular formula by which

28
14

Case No.: 5:11-cv-04585-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
MOTION FOR ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

th[e] outcome must be tested.'" Bellinghausen v. Tractor Supply Co., No. 13-cv-02377-JSC, 2015 WL 1289342, at *5 (N.D. Cal. Mar. 20, 2015). Rather, "the court's assessment of the likelihood of success is 'nothing more than an amalgam of delicate balancing, gross approximations and rough justice.'" Id. The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." Garner v. State Farm Mutual Auto. Ins. Co., No. 08-CV-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. April 22, 2010).

Here, Plaintiffs argue that eBay maintained a vigorous defense throughout the litigation, where the Court has twice dismissed the fraud-based claims, and dismissed with prejudice all claims seeking to recover recurring Insertion Fees at any time the operative Fees Schedules stated that "Insertion Fees are charged every 30-day period," which is most of the Class Period. See Dkt. No. 130 at 18; see also Verges Decl. ¶ 18. Moreover, even if the Court were to certify a class over eBay's opposition, any verdict would not include most of the Insertion Fees at issue, meaning Plaintiffs would have to appeal a win at trial to bring those fees into play. Notwithstanding these obstacles, the Settlement Agreement provides an immediate, substantial refund of recurring GTC renewal fees. The Settlement represents a good deal for the class in view of the risks posed to Plaintiffs' case. Therefore, this factor weighs in favor of the settlement.

### ii. The Risk, Expense, and Complexity of Continued Litigation

"Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Ching v. Siemens Indus., Inc., No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014). Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation. See LaGarde v. Support.com, Inc., No. C 12-0609 JSC, 2013 WL 1283325, at *4 (N.D. Cal. Mar. 26, 2013).

Here, Plaintiffs argue that risks of continued litigation are substantial, as portions of the case were already dismissed, class certification is not a given, and eBay would almost certainly

United States District Court
Northern District of California

15

1    move for summary judgment if Plaintiffs obtained class certification.  See Ching, 2014 WL

2    2926210, at *4.  These procedural obstacles substantially increase the risk that the class would see

3    no recovery at all.  Additionally, the expenses of litigating the case would rise substantially if the

4    litigation were to continue.  Specifically, Plaintiffs would have to analyze data for more than one

5    million users, and many millions of listings, in order to overcome eBay's defenses to class

6    certification and on the merits.  See LaGarde, 2013 WL 1283325, at *4.

7         As such, this factor favors settlement because it avoids significant delays and provides all

8    class members with an immediate, substantial benefit in the form of a credit or check.  Curtis–

9    Bauer v. Morgan Stanley & Co., Inc., No. 06–C–3903 TEH, 2008 WL 4667090, at *4 (N.D. Cal.

10   Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the

11   litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

12        **iii.    The Risk of Maintaining Class Action Status**

13        Although a class can be certified for settlement purposes, the notion that a district court

14   could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a

15   settlement.  See Rodriguez v. West Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009).

16        Here, Plaintiffs contend that eBay has presented myriad arguments in opposition to class

17   certification, particularly emphasizing the predominance of individual issues in determining both

18   liability and damages.  See Dkt. No. 140 at 14.  For example, eBay asserted that Plaintiffs' claim

19   cannot be certified because extrinsic evidence unique to each seller would be needed to determine

20   each seller's understanding and expectations regarding the fees for GTC Listings.[5]

21        In addition, eBay and its expert contended that highly individualized information would be

22   required to assess liability and damages, including: (1) what a Class Member saw, read, or knew

23

24   [5] Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc., 601 F.3d 1159, 1176-
     77 (11th Cir. 2010) (denying certification of contract claim because "[e]ven the most common of
25   contractual questions–those arising, for example, from the alleged breach of a form contract - do
     not guarantee predominance if individualized extrinsic evidence bears heavily on the interpretation
26   of the class members' agreements"); Avritt v. Reliastar Life Ins. Co., 615 F.3d 1023, 1030 (8th
     Cir. 2010) (denying certification because a contractual ambiguity "opens the door for extrinsic
27   evidence about what each party intended when it entered the contract" so the defendant's "liability
     to the entire class for breach of contract cannot be established with common evidence").

28

1   prior to listings; (2) whether the seller saw, studied and paid invoices with renewal fees; (3) each

2   Seller's experience with GTC Listings; and (4) each seller's revenues and profits from GTC sales.

3   See Dkt. No. 140 at 14.

4        The Settlement provides the entire class a recovery on claims that eBay vigorously

5   disputes and will eliminate the risk that a class could not be certified or maintained throughout the

6   litigation.  This factor also supports approval of the Settlement.

7            **iv.    The Amount Offered in Settlement**

8        The fourth Churchill factor "is generally considered the most important."  See Bayat v.

9   Bank of the W., No. C-13-2376 EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015).  Here,

10  at the time of settlement, approximately $9 million of the total fees at issue were attributable to the

11  first renewal period; the $6.4 million settlement fund comprises more than 71% of these renewal

12  fees.  See Verges Decl. ¶ 22.  After payment of expenses of administration and the requested

13  attorneys' fees, the settlement class will receive approximately 50% of these total first month

14  renewal fees.  In addition, the payment represents approximately nine percent of the total (every

15  renewal month) fees at issue in the case at the time of the Settlement Agreement.  Id.

16       This falls in the range of prior approved settlements in class actions, including those

17  involving eBay sellers.  See Custom LED, LLC v. eBay, Inc., 2013 WL 6114379, at *14

18  (approving settlement awarding eBay sellers 1.8% or 16% of the fees at issue and explaining that

19  "courts have held that a recovery of only 3% of the maximum potential recovery is fair and

20  reasonable when the plaintiffs face a real possibility of recovering nothing absent the settlement");

21  In re Omnivision Techs., 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007) (approving settlement

22  awarding class members 9% of potential damages).  As such, this factor favors settlement.

23          **v.    The Extent of Discovery Completed and the Stage of the Proceedings**

24       This factor "evaluates whether 'the parties have sufficient information to make an

25  informed decision about settlement.'"  Larsen, 2014 WL 3404531, at *5.  Formal discovery is not

26  a requirement for final settlement approval; "[r]ather, the court's focus is on whether the parties

27  carefully investigated the claims before reaching a resolution."  Bellinghausen, 2015 WL

United States District Court
Northern District of California

28

17

1289342, at *7.

Here, the parties settled the case more than three years into the litigation - eBay produced over 90,000 pages of documents and over 2 GB of data, including 40,000 transactions worth of sample GTC listing data.  See Dkt. No. 130 at 11.  eBay deposed both Named Plaintiffs, and Plaintiffs deposed eBay witnesses in California and Utah.  Id.  Both Parties retained experts, exchanged expert reports, and deposed each other's experts.  Id.  Plaintiffs' counsel also retained an expert on eBay's database, to help evaluate data queries and the results.  Id.  In addition, Plaintiffs' counsel has significant experience with eBay and has studied eBay's data architecture and sample data in other cases.  Id.  Thus, when the parties settled, Plaintiffs' counsel contends that he had a comprehensive and thorough understanding of all of the key issues in the case, including the web pages and disclosures at issue, the functionality and charges for GTC Listings, how such charges are invoiced, and the available electronic data on GTC Listings.  See Dkt. No. 140 at 16.

All of this information allowed the parties to make reasoned and informed settlement decisions.  See Bellinghausen, 2015 WL 1289342, at *7 (factor supported approval where parties had litigated multiple motions to dismiss, engaged in formal and informal discovery, produced and analyzed hundreds of pages of documents, prepared detailed mediation briefs, and participated in mediation).  As such, this factor weighs in favor of settlement.

### vi.    The Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  Rodriguez, 563 F.3d at 967.  Consequently, "'[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'"  In re Omnivision Techns., Inc., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2009).

Here, Plaintiffs' counsel states that he has defended or prosecuted over 20 class actions in the past 20 years and knows the risks both sides face.  Dkt. No. 140 at 17.  The proposed Settlement is the result of extensive arm's-length bargaining and was achieved only after extensive

United States District Court
Northern District of California

18

Case No.: 5:11-cv-04585-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
MOTION FOR ATTORNEYS' FEES AND COSTS

analysis, hard-fought litigation, and difficult negotiations – including two formal mediations before retired judges (Judge Tevrizian and Judge West of JAMS).  See Dkt. No. 130 at 28.  Given the uncertainty and substantial expense of going forward with a motion for class certification and trial on the merits against eBay, counsel believes the settlement is in the best interests of the class. Verges Decl. ¶¶ 6, 25.  Consequently, this factor favors approval of settlement.

### vii.    The Presence of a Governmental Participant

The Class Action Fairness Act, or "CAFA," requires that notice of a settlement be given to state and federal officials and provides those officials a window of time to comment.  28 U.S.C. § 1715(b).  "Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures."  Garner, 2010 WL 1687832, at *14.  Here, no state Attorney General has responded to the CAFA notice, indicating that such officials either do not object to the Settlement.  See Dkt. No. 140 at 17-18.  Thus, this factor favors the settlement.

### viii.    The Reaction of Class Members

A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.  See Hanlon, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness.").  Here, of over 1,188,000 potential Class Members, only 97 have opted out.  In addition, only three objections were filed (including one that was not timely), translating into an objection rate of 0.00025%.  These statistics indicate a favorable reaction by class members and their overall satisfaction with the Settlement.  See Custom LED, 2013WL 6114379, at 9 (granting final approval and characterizing 0.04% exclusion rate, with one objection, as "overwhelmingly positive" reaction); Chun-Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (explaining that 4.86% opt-out rate strongly supported approval).

Case No.: 5:11-cv-04585-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

ix.    Risk of Collusion among the Negotiating Parties

In addition to examining the eight <u>Churchill</u> factors, when a settlement is reached prior to formal class certification the Court must ensure that the settlement is not the product of collusion. <u>See</u> <u>In re Bluetooth Headset Prods. Liab. Litig.</u>, 654 F.3d 935, 946–47.  Collusion may not be evident on its face, thus the Ninth Circuit has provided examples of subtle signs of collusion including: (1) "when counsel receive a disproportionate distribution of the settlement;" (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds;" and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." <u>Id.</u> at 947.

Here, Plaintiffs' counsel is seeking for only the "benchmark" 25% fee, which is a lodestar multiplier of less than two.  <u>See</u> Dkt. No. 134 at 2.  There are no coupons or "soft" values to the settlement amount upon which Plaintiffs' counsel predicates its fee request.  <u>See</u> Dkt. No. 134 at 9.  Each settlement class member will automatically receive an account credit or a check.  <u>See</u> <u>id.</u>  Moreover, it is not possible for class counsel or the class representatives to receive any special benefit in the settlement, because their awards are not conditions of the settlement, and any reduction in the awards serves only to increase the net settlement fund payable to the class.  <u>See</u> Settlement Agreement ¶¶ 2.1 (a), (b).

Consequently, the settlement displays none of the <u>Bluetooth</u> signs suggesting a collusive agreement.  Accordingly, this factor along with the eight <u>Churchill</u> factors, weighs in favor of finally approving the settlement.

## IV.    ATTORNEYS FEES, COSTS AND INCENTIVE AWARDS

The attorneys' award must be reasonable, even if the parties have already agreed to an amount.  <u>In re Bluetooth Headset Prod.s Liab. Litig.</u>, 654 F.3d 935, 941 (9th Cir. 2011).  Courts have discretion to award attorneys' fees to a prevailing plaintiff if: "(1) fee-shifting is expressly authorized by the governing statute; (2) the opponents acted in bad faith or willfully violated a court order; or (3) the successful litigants have created a common fund for recovery or extended a substantial benefit to a class." <u>Id.</u>

Case No.: <u>5:11-cv-04585-EJD</u>
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS

1    "Where a settlement produces a common fund for the benefit of the entire class, courts

2    have discretion to employ either the lodestar method or the percentage-of-recovery method."  Id.

3    at 942.  The former method is routinely used when "the relief sought, and obtained, is often

4    primarily injunctive in nature and thus not easily monetized."  Id.  The figure is calculated "by

5    multiplying the number of hours the prevailing party reasonably expended on the litigation (as

6    supported by adequate documentation) by a reasonable hourly rate for the region and for the

7    experience of the lawyer."  Id.  The court can "adjust [the figure] upward or downward by an

8    appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, including

9    the quality of representation, the benefit obtained for the class, the complexity and novelty of the

10   issues presented, and the risk of nonpayment."  Id. at 941-42.  "Foremost among these

11   considerations, however, is the benefit obtained for the class."  Id. at 942.

12         Under the latter method, the court awards as fees a percentage of the common fund in lieu

13   of the lodestar amount.  Id.  "[C]ourts typically calculate 25% of the fund as the 'benchmark' for a

14   reasonable fee award, providing adequate explanation in the record of any 'special circumstances'

15   justifying a departure."  Id.  Relevant factors to a determination of the percentage ultimately

16   awarded include: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and

17   quality of work; (4) the contingent nature of the fee and the financial burden carried by the

18   plaintiffs; and (5) awards made in similar cases."  Tarlecki v. bebe Stores, Inc., No. C 05–1777

19   MHP, 2009 WL 3720872, at *4 (N.D. Cal. Nov. 3, 2009).

20         "Though courts have discretion to choose which calculation method they use, their

21   discretion must be exercised so as to achieve a reasonable result."  Id.

22         **A.    Percentage of the Fund**

23         Plaintiffs' counsel negotiated a $6.4 million Settlement Fund.  See Dkt. No. 134 at 2.

24   Plaintiffs' counsel seeks a fee award of $1,600,000, which is equal to 25% of the Settlement Fund.

25   See id.

26         Plaintiffs' counsel argues that the case presented novel and complex questions and that he

27   faced a substantial risk of non-payment because he took the case on a contingency basis.  See id. at

28

Case No.: 5:11-cv-04585-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
MOTION FOR ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

14-15.  In addition, counsel contends that the benefit to the class is substantial and points out that the award requested is consistent with that awarded in other similar cases.  See id. at 12-13. Specifically, that class members will receive 50% of the fees associated with the first renewal of every GTC Listing ever placed during the 4-year class period.  See id.  Finally, counsel argues that he worked diligently to keep costs low; for example, obtained competing bids from various potential administrators to find a competent and cost-effective administrator to minimize the expense of administration.  See id.

Having considered the relevant factors, the Court agrees with Plaintiffs' counsel that this action posed a substantial risk and required significant time and skill to obtain a result for the class.  Moreover, counsel's request is not disproportionate to the class benefit and is comparable to awards approved in other similar internet privacy class actions, including two previously approved by this Court.  See In re Netflix Privacy Litig., 2013 WL 1120801, at *9–10 (approving benchmark award of $2.25 million); see also In re Google Referrer Header Privacy Litig., 2015 WL 1520475, at *9-10 (approving a benchmark fee amounting to 25% of the settlement fund). Accordingly, a benchmark fee award of amounting to 25% of the settlement fund is appropriate.

### B.   Lodestar Comparison

The Ninth Circuit encourages district courts "to guard against an unreasonable result" by cross-checking attorneys' fees calculations against a second method.  In re Bluetooth, 654 F.3d at 944.  Since a 25% benchmark award might be reasonable in some cases but arbitrary in cases involving an extremely large settlement fund, the purpose of the comparison is to ensure counsel is not overcompensated.  In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 109 F.3d 602, 607 (9th Cir. 1997).

Here, Plaintiffs' counsel calculates a lodestar figure of over $1,035,000 for 2600 hours, to which they apply a 1.6 multiplier.  See Verges Decl. ¶ 7.  They also seek $72,923.16, in reimbursement of all out of pocket expenses incurred through final administration of the settlement.  See Dkt. No. 134 at 2.  This represents an overall average billing rate of $397 per hour and a maximum partner level rate of $450 per hour; associate $315 per hour; and paralegal $195

22

United States District Court
Northern District of California

1   per hour.  See Magsafe Apple Power Adapter Litig., 2015 WL 428105, at *14 (N.D. Cal. Jan. 30,

2   2015) (In the Bay Area, reasonable hourly rates for partners range from $560 to $800, for

3   associates from $285 to $510, and for paralegals and litigation support staff from $150 to $240);

4   Rose v. Bank of Am. Corp., No. 5:11-CV-02390-EJD, 2014 WL 4273358, at *12 (N.D. Cal. Aug.

5   29, 2014) (finding reasonable: partners rates between $350 - $775 per hour; associates at $325 -

6   $525 per hour; and paralegal rates between $100 - $305 per hour).

7           Counsel points out that only one attorney attended each deposition to either question a

8   witness or prepare and defend the named Plaintiffs and Plaintiffs' expert.  Verges Decl. ¶ 14.  In

9   addition, the only time more than one lawyer attended anything were the two mediations, where

10  two attorneys from counsel's firm attended each single-day mediation.  See Dkt. No. 134 at 17.

11  Counsel again argues that the settlement amount, which net of the requested attorneys' fees will

12  result in a 50% payment of all first renewal fees for all GTC Listings, is a good result for the class

13  members.  See Dkt. No. 134 at 19.  Finally, the resulting multiplier is in the range of acceptable

14  lodestar multipliers.  See Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 334 (N.D. Cal. 2014)

15  (applying 2.83 multiplier); In re Netflix Privacy Litig., No. 5:11-CV-00379 EJD, 2013 WL

16  1120801, at *10 (N.D. Cal. Mar. 18, 2013) (approving 25% award that was 1.66 times lodestar);

17  see also Craft v. City of San Bernadino, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (court

18  ordered attorneys' fee of $6.375 million, or 25% of the settlement fund, where lodestar cross-

19  check showed a multiplier of 5.2).

20          Plaintiffs' counsel has provided sufficient support for its proposed lodestar calculation.

21  The amount of hours and other costs attributed to this case are reasonable in light of the efforts

22  required to litigate and ultimately engage in a lengthy settlement process.  Importantly, counsel

23  notes that they do not suffer from any of the Magsafe issues.[6]  In addition, the hourly rates charged

24

25  ────────────────

26  [6] Those issues were described as follows: "(1) attorney rates were as high as $850 per hour; (2)
    five different law firms submitted bills; (3) class counsel spent over 4,600 hours between May

27  2009 and August 2010, and another 1136.75 hours thereafter; and (4) as many as six partners from
    different law firms attended mediation or hearings."  In re Magsafe Apple Power Adapter Litig.,
    No. 5:09-CV-01911-EJD, 2015 WL 428105, at *10-14 (N.D. Cal. 2015).

28
                                              23
    Case No.: 5:11-cv-04585-EJD
    ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
    MOTION FOR ATTORNEYS' FEES AND COSTS

1  fall within the range of those approved in other similar cases, and the suggested lodestar multiplier

2  of 1.6 is comparable or lower to that previously permitted by other courts in similar internet

3  privacy cases.  Accordingly, the lodestar cross-check confirms the reasonableness of the

4  percentage-based calculation.

5    **C.    Incentive Awards**

6     "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs,

7  are eligible for reasonable incentive payments."  Staton v. Boeing Co., 327 F.3d 938 (9th Cir.

8  2003).  To determine the appropriateness of incentive awards a district court should use "relevant

9  factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree

10 to which the class has benefitted from those actions ... the amount of time and effort the plaintiff

11 expended in pursuing the litigation ... and reasonabl[e] fear[s of] workplace retaliation."  Id.

12    Here, Plaintiffs request $15,000 to each class representative to compensate them for the

13 time they have invested in this case and the risk they undertook of non-recovery.  See Dkt. No.

14 134 at 21.  Plaintiffs argue that there was a very real and significant risk because they rejected an

15 earlier and much lower settlement proposal by eBay in January 2014 in order to further pursue

16 discovery and class certification.  Verges Decl. ¶ 18.  They believe this exposed them to thousands

17 of dollars in costs, which eBay stood to recover.  See 28 U.S.C. §1920.  In addition, Plaintiffs

18 argue that eBay put each of the Plaintiffs' accounts under a virtual microscope in an effort to

19 disqualify them as Class Representatives and threatened counterclaims for allegedly unpaid fees.

20 See Dkt. No. 134 at 23.

21    Each of the Plaintiffs estimates that they spent in excess of 150 hours over the

22 approximately three and one-half years this case has been pending.  See id.  The Plaintiffs also

23 studied each of Plaintiffs' pleadings before they were filed, all discovery submitted to Plaintiffs,

24 and each of the pleadings filed by eBay.  See id.  Finally, Plaintiffs' counsel argues that the time,

25 inconvenience, and distraction of this litigation over four years cost them over $15,000 in lost

26 opportunity.  See id.

27    The Court recognizes that the Plaintiffs went to great lengths to protect the interests of the

28

Case No.: 5:11-cv-04585-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
MOTION FOR ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

class and invested time and effort in pursuing this litigation.   However, the Court is not persuaded that this case warrants an upward departure from the established incentive awards.  In this district, $5,000 for each class representative is presumptively reasonable.  <u>Jacobs v. Cal. State Auto. Ass'n Inter–Ins. Bureau</u>, No. C 07–00362 MHP, 2009 WL 3562871, at *4–5 (N.D. Cal. Oct. 27, 2009); <u>see also</u> <u>Chao v. Aurora Loan Services, LLC</u>, No. C 10-3118 SBA, 2014 WL 4421308, at *4 (N.D. Cal. Sept 5, 2014) (noting that "Plaintiffs' … request for a $7,500 incentive award for each representative Plaintiff is above the $5,000 figure which this Court has determined is presumptively reasonable").

Accordingly, the Court DENIES Plaintiffs' request for $15,000 in incentive awards for each class representative and finds that $5,000 for class representative is presumptively reasonable.

## V.   OBJECTIONS

The Court now addresses the points raised in the three written objections[7], keeping in mind that objectors to a class action settlement bear the burden of proving any assertions they raise challenging the reasonableness of a class action settlement.  <u>Oregon</u>, 913 F.2d at 581 (9th Cir. 1990).

The objectors have not satisfied this burden.  All three objections were submitted *pro se*, and none raises any substantive concerns about the fairness, reasonableness, or adequacy of the Settlement.  In addition, the Narkin Objection is untimely, and Narkin is not a member of the Settlement Class.

Burgess attacks the proposed class incentive awards as a payment to class representatives in violation of <u>Radcliffe v. Experian Information Solutions, Inc.</u>, 715 F.3d 1157 (9th Cir. 2014).  In <u>Radcliffe</u>, the settlement agreement explicitly conditioned incentive awards on the class representatives' support for settlement.  In addition, the maximum amount any class member could receive under the settlement was $750, which the court found compared unfavorably with

---

[7] They have been filed by Reginald Burgess ("Burgess") (Dkt. No. 135); Daniel Pailes ("Pailes") (Dkt. No. 136); and Sebrina Narkin ("Narkin") (Dkt. No. 138).

Case No.: 5:11-cv-04585-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS

1    the $5,000 incentive awards.  Radcliffe, 715 F.3d at 1165.  In contrast, the Settlement Agreement

2    imposes no conditions on incentive awards.  Settlement Agreement ¶ 2.1(a).  Moreover, the Court

3    has adjusted incentive awards to be consistent with the value of the class benefit, and notes that the

4    approved amounts are consistent with the relevant Ninth Circuit authority.

5         Next, Burgess appears to argue that class certification is improper, but does not address

6    any of the Rule 23 criteria that were set forth in the Motion for Preliminary Approval.  See Dkt.

7    No. 135 at 2, 5.  As set forth in that motion, all persons who placed GTC Listings and paid

8    recurring fees are sufficiently similarly situated to be treated as a class for settlement purposes.

9    See Dkt. No. 130 at 12-15.

10        Burgess also objects to class counsel because they are an out of state law firm.  See Dkt.

11   No. 135 at 5.  Burgess' objection is unfounded because class counsel was approved by the Court,

12   was admitted pro hac vice, associated with California counsel, and has successfully represented

13   classes against eBay in other matters in this District and Division.  See Alamo v. eBay, No. C 09-

14   01733-EJD (N.D. Cal. Dec. 18, 2009).

15        Pailes objects that the Plaintiffs' counsel will receive more than 25% of the settlement.

16   See Dkt. No. 136 at 3.  This objection is unfounded because the requested amount of attorneys'

17   fees is exactly 25% of the Settlement Fund.  See Dkt. No. 134 at 2.

18        Finally, Narkin is not a class member, nor did she timely file her objection.  Dkt. No. 138.

19   eBay's records show that no one by her name or using her user ID paid any recurring GTC Listing

20   fees during the Class Period.  See Dkt. No. 140-23 ("Vasireddy Decl.") ¶¶ 3-4.  The deadline for

21   filing objections was April 20, 2015, and the Narkin Objection was not filed until April 24, 2015.

22   See Doc. 133 ¶ 10 at 7.

23        For these reasons, the Court is unpersuaded by the objections.  They are each overruled.

24   **VI.    CONCLUSION**

25        Based on the foregoing reasons, the Court rules as follows:

26        1.  Plaintiffs' Motion for Final Approval of Class Action Settlement is GRANTED; and

27        2.  Plaintiffs' Motion for Award of Attorneys' Fees and Expenses and Class Representatives

28

*United States District Court*
*Northern District of California*

Case No.: 5:11-cv-04585-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
MOTION FOR ATTORNEYS' FEES AND COSTS

1    Incentive Awards is also GRANTED.  The Court awards $1,600,000 in attorneys' fees,

2    $72,923.16 in expenses, and $5,000 to each class representative in incentive awards.

3    The Clerk shall close this file upon entry of Judgment.

4    **IT IS SO ORDERED.**

5    Dated: September 15, 2015

6    

7    EDWARD J. DAVILA
     United States District Judge

United States District Court
Northern District of California

Case No.: 5:11-cv-04585-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION; GRANTING
MOTION FOR ATTORNEYS' FEES AND COSTS